### UTICA MUTUAL INSURANCE COMPANY, Appellant,

v.

Lyle A. WALKER; Robert G. Walker; Peoples Exchange Bank of Beattyville, Kentucky; and First Security National Bank & Trust Company, Appellees.

Lyle A. WALKER; and Robert G. Walker, Cross-Appellants,

v.

UTICA MUTUAL INSURANCE COMPANY; Peoples Exchange Bank of Beattyville, Kentucky; and First Security National Bank & Trust Company, Cross-Appellees.

FIRST SECURITY NATIONAL BANK & TRUST COMPANY, Appellant,

v.

UTICA MUTUAL INSURANCE COMPANY; Lyle A. Walker; Robert G. Walker; and Peoples Exchange Bank of Beattyville, Kentucky, Appellees.

Court of Appeals of Kentucky.

Jan. 23, 1987.

Discretionary Review Denied by Supreme Court March 24, 1987.

Thomas E. Roma, Jr., Louisville, for Utica Mut. Ins. Co.

James T. Gilbert, Richmond, for Lyle A. Walker and Robert G. Walker.

John K. Webb, Paris, for Peoples Exchange Bank of Beattyville, Ky.

Harvie B. Wilkinson, Lexington, for First Sec. Nat. Bank & Trust Co.

Before COMBS, GUDGEL and McDONALD, JJ.

GUDGEL, Judge:

These appeals and cross-appeal stem from a judgment entered by the Lee Circuit Court. The court adjudged that appellant Utica Mutual Insurance Company (Utica) is not entitled to enforce payment of a sight draft drawn upon a letter of credit issued in its favor by Peoples Exchange Bank (Peoples). Utica contends that the court erred by concluding that it failed to strictly comply with the terms of the letter of credit and that it therefore is not entitled to draw upon the letter of credit. Cross-appellant Robert Walker contends the court erred by concluding that he is not entitled to recover the funds he deposited with Peoples as collateral for the letter of credit. We disagree with Utica's contention but agree with Walker's contention. Hence, we affirm on the direct appeals and reverse on the cross-appeal.

The case has been submitted to this court on an agreed statement of facts. Appellees Lyle and Robert Walker were sole shareholders in a corporation known as Walker & Walker, Inc., which began negotiating with Brooks & Long Coal Company toward acquiring certain Tennessee coal leases and mining permits from Brooks & Long. In anticipation of this acquisition, Robert Walker requested and Utica executed a $42,000 performance bond in favor of the Tennessee Department of Conservation, securing the obligations of Brooks & Long on a mining permit. On the same date and at the request of the Walkers, Peoples issued a $42,000 letter of credit in favor of Utica. That letter of credit was subsequently amended in a document drafted by Utica and stating as follows:

Funds under this Letter of Credit are available to you against your sight draft(s) drawn on us, mentioning thereon our Credit No. 76, accompanied by your signed, written statement that funds are required to cover a liability, loss, cost, expense and/or unpaid premiums *incurred by you under a bond(s) and/or*

*undertaking(s) executed by you on behalf of WALKER & WALKER, INC. in favor of the TENNESSEE DEPARTMENT OF CONSERVATION.* (Emphasis added.)

Further, as president of Walker & Walker, Inc., Robert Walker executed an agreement which provided that the corporation would indemnify Utica for any losses it incurred by virtue of having executed a performance bond on behalf of Brooks & Long.

Walker & Walker subsequently broke off its negotiations with Brooks & Long. Thereafter, Utica was called upon to honor and pay the $42,000 performance bond, as Brooks & Long defaulted on its obligations to the state of Tennessee. Utica subsequently issued a sight draft drawn upon the disputed letter of credit. This action, seeking to prevent Peoples from honoring Utica's sight draft, followed. The trial court adjudged that Utica was not entitled to receive payment under the letter of credit. The court also adjudged that cross-appellant Robert Walker was not entitled to recoup certain collateral he had deposited with Peoples, and ordered those funds paid to Utica and/or appellee First Security. These appeals and cross-appeal followed.

The court adjudged that Utica was not entitled to draw upon the letter of credit because it failed to strictly comply with the document's terms. The court's conclusion was premised on the fact that although Utica was entitled to draw funds on the letter of credit if a loss was incurred by it as a result of having executed a bond "on behalf of" Walker & Walker in favor of the Tennessee Department of Conservation, Utica's loss was instead occasioned as a result of having executed a bond on behalf of Brooks & Long.

Utica argues, however, that the court construed the phrase "on behalf of" too narrowly. Specifically, Utica urges that since the stipulated facts clearly establish that the performance bond was actually executed at the request and for the benefit of Walker & Walker, it was executed "on behalf of" the corporation within the meaning of that phrase in the letter of credit. Moreover, Utica urges that, at the very least, the phrase "on behalf of" is ambiguous and susceptible of more than one meaning and hence, that the court should have adopted an interpretation of the phrase which reaches an equitable rather than an inequitable result. *See Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461 (2nd Cir.1970). Further, Utica urges that since the letter was ambiguous, the court should have construed it as strongly against the issuer (Peoples) as its reasonable reading would justify. *Lamborn v. National Park Bank of New York,* 148 N.E. 664, 240 N.Y. 520 (1925). Finally, Utica argues that even if it did not strictly comply with the terms of the letter of credit, it did reasonably comply with them. Hence, this court should conclude that Utica's substantial compliance with those terms was sufficient for purposes of demanding payment. *See Transamerica Delaval, Inc. v. Citibank, N.A.,* 545 F.Supp. 200 (S.D.N.Y.1982).

■ We find Utica's arguments to be unpersuasive. The parties agreed that the disputed letter of credit would be subject to Article 5 of New York's Uniform Commercial Code. Contrary to Utica's contention, the New York courts have consistently interpreted the provisions of § 5–109 of the code as requiring the beneficiary of a letter of credit to strictly comply with its terms. *See Venizelos, supra; Sztejn v. Schroder Banking Corp.,* 177 Misc. 719, 31 N.Y.S.2d 631 (1941). Further, valid policy reasons exist for adhering to such a rule. As noted in *Philadelphia Gear Corp. v. Central Bank,* 717 F.2d 230, 236 (5th Cir.1983):

the rejection of strict compliance as a doctrine would vitiate the economic value of a credit transaction; for not only would the issuer be compelled to assume the risks of the underlying contract's nonperformance, it would also be required to assume the additional risks of judicial realignment of its obligations under the credit:

"[T]he peculiar values of the letter of credit are (1) that they provide the assurance of payment, (2) that they can provide that assurance in respect to any transaction, and (3) that they are inexpensive. These values will be lost if performance of the letter of credit is to be infected by the nonper-

formance of the underlying transaction because *when* that happens the letter of credit is not an assurance of payment and because *if* that happens the cost of a letter of credit must include the issuer's problematic litigation expense." (Citation omitted.)

■ Moreover, contrary to Utica's contention, reliance may not be had upon the underlying transactions between the beneficiary and the bank's customer for purposes of amplifying the terms of a letter of credit. Indeed, Peoples had neither a duty nor a right to look to the underlying transactions. *See Philadelphia Gear Corp., supra; First National Bank of Council Bluffs v. Rosebud Housing Authority*, 291 N.W.2d 41 (Iowa 1980). Therefore, Utica's argument that the court below should have looked to the underlying transactions in construing the phrase "on behalf of" is without merit.

■ Similarly, Utica's argument that the disputed letter of credit is ambiguous and that it must be construed equitably and most strongly against Peoples is unpersuasive. It was stipulated that Utica drafted the letter of credit. In such a situation, any ambiguous provisions in the letter must be construed against the beneficiary who drafted it. *East Girard Savings Association v. Citizens National Bank and Trust Company of Baytown*, 593 F.2d 598 (5th Cir.1979).

Finally, we note that Utica's reliance upon the doctrine of substantial compliance is misplaced. This doctrine has been applied by the courts only in cases which involve technical deviations in collateral documents which were submitted along with beneficiaries' requests for payment. None of those cases involve disputes as to the meaning of the terms expressed in the letters of credit themselves. Here, by contrast, the dispute involves the interpretation of terms of the letter of credit itself, and not the interpretation of technical deviations in collateral documents.

■ Here, it is undisputed that Utica did not execute a bond on behalf of Walker & Walker, and that the disputed letter of credit expressly states that it covers only losses on bonds executed on behalf of Walker & Walker. Hence, we hold that the court did not err by refusing to permit Utica to draw on the letter of credit.

■ On cross-appeal, appellee Robert Walker argues that the court erred by adjudging that he is not entitled to recoup certain collateral which he deposited with Peoples. We agree.

The court concluded that Robert Walker should be adjudged liable to Utica under the letter of credit. This determination is clearly erroneous. Utica did not file a counterclaim against either Robert or Lyle Walker. Rather, it merely filed an answer to the Walkers' complaint and asked the court to adjudge that it was entitled to draw on the letter of credit. Since Utica asserted no claims against Robert Walker, the court erred by adjudging Walker personally liable to Utica. This conclusion obviates the need to address the issue of whether Robert Walker could have been adjudged liable on a letter of credit which he did not issue.

So much of the court's judgment as adjudges Robert Walker personally liable to Utica in the amount of $9,017.50 is reversed and remanded with directions to enter a judgment consistent with our views. The remainder of the court's judgment is affirmed.

All concur.